## A. W. WALKER *v.* J. S. CUCULLU.

A party purchasing property of various kinds in *block*, should make due proof of that portion which proved to be deficient, by reason of redhibitory vices, and its relative value.

A
PPEAL from the District Court of the Parish of St. Bernard, *White, J. Hunton & Miller, C. Roselius, P. Soulé, L. Charret, P. E. Bonford,* and *A. Beatty,* for defendant.

*A. W. Walker and L. Madison Day, for plaintiff and appellant.*—This suit grows out of the purchase of a plantation and slaves by plaintiff from defendant, on the 27th day of September, 1857, for the price and sum of $135,000.

The plaintiff brought this action of quanti minoris to be allowed a reduction and diminution on the purchase price of certain of the slaves, on the grounds that they were afflicted at the time of sale with certain redhibitory vices and maladies, and were of greater ages than represented in the act of sale.

The defendant, besides special defences denying plaintiff's right of recovery, pleaded the prescription of one year.

The first question then for consideration is this plea of prescription, for if well founded it would render any further consideration of the case unnecessary.

It is true, the present suit was not commenced until the 11th day of March, 1859. But it is also true, that a similar suit, and for the same causes of action, was instituted in the Fifth District Court of New Orleans on the 2d March, 1858, and that a final judgment (of non-suit in part) was rendered therein on the 10th day of January, 1859.

Such being the case, it is very clear that the plea of prescription must be overruled. For the suit in the Fifth District Court operated as a suspension of prescription during the pendency of the same, and the present action was brought within the proper time after the termination of the first suit, for the same cause of action. 10 An. R. 396; 7 An. 523; 8 An. 469; 10 An. 327; 12 An. 627; 14 An. 692.

The next matter for consideration is the bill of exceptions taken by plaintiff to the admission by the Court of certain testimony, and which was introduced by the defendant for the purpose of proving the manner in which plaintiff treated said slaves after he had purchased the same. That the bill of exceptions was well taken there can be no doubt.

The action was brought for a diminution of price on the grounds of certain redhibitory vices and defects existing at the time of sale, and also because the ages of certain of the said slaves were much greater than represented in the act of sale.

The true and only issues in the case then were, whether or not these redhibitory vices and defects existed at the time of sale, and whether or not any of the slaves were of greater ages than as specified in the act

of sale. It follows then that any and all evidence outside of these issues, was irrelevant, and should have been excluded by the lower Court. The bill of exceptions is therefore well taken.

And, besides, we may remark that the evidence clearly shows that the charges of improper treatment of the slaves is wholly unfounded, and were only started after the institution of the first suit for a diminution of price.

The very witness for defendant, by whom it was sought to prove the alleged improper treatment, states on his cross-examination, that plaintiff, after the purchase of said plantation had placed other slaves on the same, and that these slaves were well clad and fat. It is not likely then that any of plaintiff's other slaves on the same place, were treated in any other or a different manner. There could be no motive so to do; but on the contrary, his own interest would prompt him to treat all alike.

Having disposed of these preliminary questions, we pass to the consideration of the case on its merits.

The learned Judge of the Fourth District Court disallowed that part of the claim for a diminution of price on account of the ages of a part of the slaves being of greater ages than as specified in the act of sale, on the ground, solely, as stated in his opinion, that "it was in evidence that he, plaintiff, examined the slaves; had a good opportunity to judge for himself," etc.

But in this respect, that learned and eminent Judge was mistaken, and that mistake no doubt was superinduced by the testimony of a witness (and to the admissibility of which the bill of exceptions was taken), who speaks of and expressly refers to an examination of the slaves by plaintiff when the plantation and slaves were actually delivered to him on the 7th of October, about ten days after the act of sale, which was passed on the 28th of September.

This witness says, "that he was not present when Cucullu closed his bargain with Walker, but was present when Cucullu delivered the plantation to Walker; witness says that Walker examined the gang of slaves attached to the said plantation, when Cucullu made the delivery of said plantation," etc.

Witness says that previous to the purchase of the plantation and slaves of Cucullu, he did not see Mr. Walker on the plantation. This same witness says: "The only time he saw an examination of the said slaves by Walker, was on the 7th of October last," which we have shown, and the act of sale shows, was nine or ten days after the passage of the act of sale and after the payment of the money and the delivery of the notes for the residue of the purchase price.

Besides, there is no evidence whatever in the record to show that plaintiff ever saw the slaves at any other time than at the time they were delivered to him.

Such being the facts, it is very clear the lower Court should not have

rejected the claim of plaintiff for the reason assigned in his opinion. For the examination (if any) was some ten days after the act of sale was passed, the money paid, and the notes delivered.

Surely, an examination after all these facts had transpired, is not to be allowed the same force and effect as an examination made at or before the time of the passage of the act of sale!

All that can be said, then, is, that the plaintiff bought without seeing the slaves. Besides, had he actually seen and examined them before, or at the time of the sale, the evidence shows that when slaves pass the age of thirty (and the slaves complained of were over that age, and so specified in the act of sale), they look much younger than they really are, and that their ages cannot, by simple inspection, be told with any degree of certainty; the variation or difference being from five to fifteen years.

Such being the fact, even had we made an actual examination of the slaves at or before the time of sale, we would not thereby be concluded from relief, as the evidence of witnesses who resided in the neighborhood, and had long known the slaves, shows the great disparity between the actual ages and that stated in the act of sale, and, also, as will hereinafter be shown, the great disparity in price on account of that difference.

For, even where a party has full opportunity to examine and ascertain the truth, he may and had the right to rely without examination on the representations and statements of another made to him, about any matter of interest to him, and if the representation proves false, the party so misrepresenting (whether he knows it to be true or not, 1 Story's R. 57; 1 Story's Eq. § 193; 13 Pet. R. 26, 36), is bound to make his representation good.

In the case of *Boyce's Executors* v. *Grundy*, 3 Pet. R. 218, the Supreme Court of the United States says: "It is said that it ought to have put him on inquiry; but he was in possession of Mr. Boyce's positive assurance to the contrary, and had a right to rely on that assurance without inquiry."

So, in this case, the plaintiff being in possession of defendant's statements in the act of sale as to the age of the negroes, had a right to rely on that statement without inquiring.

For, as is well said by the Supreme Court of Illinois: "If the complainant was too confiding, it is not for the party who has betrayed that confidence to reproach him with, or take advantage of it." 2 Gilman's R. 388.

"No man," says Lord Cranworth in delivering the opinion of the Lord Justices, (36 Eng. Ch. R. 267, in note) "can complain that another has too implicitly relied on the truth of what he has himself stated. This principle was fully recognized in the case of *Dobell* v. *Stevens*, 3. B. & C., 625, referred to by my learned brother in the course of the argument."

"And even if the party innocently misrepresents a material fact by

mistake, it is equally conclusive, for it operates as a surprise and imposition upon the other party." 1st Eq. § 193.

The Supreme Court of the United States, too, in the case of *Richards* v. 13 *Pet.* 36, holds this strong and comprehensive language :

"Whether the party thus misrepresenting a fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true, is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a fact by mistake, it is equally conclusive ; for it operates as a surprise and imposition on the other party."

ILSLEY, J. On the 28th September, 1857, plaintiff purchased from defendant a plantation in the Parish of St. Bernard, with about fifty-seven slaves, all the stock, farming implements, etc., attached to it, for the sum of $135,000, payable $25,000 cash, and the balance in notes maturing at different dates up to the 10th December, 1863. On the 2d March, 1858, plaintiff instituted suit against his vendor, in the Fifth District Court of New Orleans, claiming a deduction of $16,000 on the price of the slaves, on account of redhibitory vices and diseases existing in same at the date of sale, and others being of greater ages than represented; in which suit he recovered $2,300, and a judgment of nonsuit was given on the remainder of his demand.

On the 11th March, 1859, the present suit was commenced in the Fourth District Court of New Orleans, claiming $11,000, for the same causes of action, and the District Judge allowed plaintiff a further sum of $2,000, and he being dissatisfied therewith, appealed.

It appears that some of the slaves named in the petition, were afflicted at the date of sale with disease, and others were something older than represented in the act of sale; but the evidence does not enable us to make an accurate estimate of the real depreciation, if any, as we are not informed of the prices for which they were sold. We think plaintiff should have shown at least their relative value, compared with the balance of the property and slaves sold *in block* with them *Non constat* that they were not estimated in the sale at the prices at which the witnesses, in this case, appraised them.

We do not know the data on which the District Judge made his estimate, and we would have to resort to speculation to make any change in the judgment, of which defendant does not complain.

Judgment affirmed, with costs of appeal.